BILLY KIRK, Plaintiff-Appellant, *v.* VILLAGE OF HILLCREST *et al.*, Defendants-Appellees.

(No. 74-56;

Second District (2nd Division)—September 24, 1975.

1064

Raymond T. Brasel, of Batavia, for appellant.

O'Brien, Burnell, Puckett & Barnett, of Aurora, and Canfield, Canfield, Franks, Wylde & Canfield, of Rockford (Gary K. Mickey, of counsel), for appellees.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The plaintiff appeals from a judgment dismissing his action of slander brought against the Village of Hillcrest and its president, Lloyd Byrnes.

The facts of the cause may be stated very briefly. During a public meeting of the Village Board and in the course of a discussion relating to another legal action in which the plaintiff here, Billy Kirk, was also the plaintiff and the Village of Hillcrest also the defendant, the present defendant, Lloyd Byrnes, said that someone had used a master key and removed papers from Byrnes' desk in the Village Hall. Byrnes is alleged to then have said:

"In fact, they took the plat showing the lots we are being sued over and I went to BILLY KIRK and, believe it or not, he gave them back. We are stripped of everything."

The quoted words are set out in the original complaint as being the false and defamatory words complained of but there were no facts alleged showing special damages. The trial court ruled the complaint did not state a cause of action for slander *per se*, that is, one not requiring a showing of special damages, and dismissed the complaint with leave to amend. Thereafter, the plaintiff filed an amended complaint in which he set out the language of the statute defining burglary (Ill. Rev. Stat. 1973, ch. 38, par. 19—1) and the definition of theft (Ill. Rev. Stat. 1973, ch. 38, par. 16—1) as well as the words of the original complaint and alleged that the above quoted language imputed the crime of burglary to the

plaintiff and was therefore slanderous *per se*, thus not requiring any showing of special damages. The defendant contends the quoted words are capable of an innocent construction and are not slanderous *per se*, therefore the action cannot be maintained in the absence of an allegation of special damages.

Originally a question of proper notice to the Village was raised, however, the trial court ruled favorably to the plaintiff on that point and it is not raised in this appeal.

The issue is, therefore, clearly one of law—whether the allegedly defamatory words constitute slander *per se*, not requiring an allegation or proof of special damages, or whether the words only present a case of slander *per quod* in which case no special damages having been alleged, the action cannot be maintained.

■■ Illinois follows the common law rule that slander *per se* is the speaking of defamatory words which impute (1) the commission of a criminal offense or (2) an infection with a communicable disease which, if true, would exclude one from society or (3) inability to perform or want of integrity in the discharge of duties of office or employment or (4) are such as to prejudice a particular person in his profession or trade. (Illinois has added two other categories by statute which are not here relevant.) Defamatory language coming within these categories does not require proof of actual damage in order to recover. The damage is legally presumed. (*Whitby v. Associates Discount Corp.*, 59 Ill.App.2d 337; *Valentine v. North American Co. for Life & Health Insurance*, 16 Ill.App.3d 277.) See also 50 Am. Jur. 2d *Libel and Slander* §§ 9, 10.

■■ In the case of language not falling within the categories set out above and therefore not slanderous *per se* such utterances may still be actionable as being slanderous *per quod* if actually defamatory, and if specific damage is alleged. In some jurisdictions it has been held that words not otherwise defamatory may be shown to be so by innuendo or explanation. This doctrine, however, is not the law of Illinois. The innocent construction rule has been adopted in Illinois by the ruling of our supreme court in *John v. Tribune Co.*, 24 Ill.2d 437. In referring to the innocent construction rule the court said:

> "That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." (24 Ill.2d 437, 442.)

While *John* was a libel case the innocent construction rule logically applies as well in a case of slander and was so applied in the slander case of *Conrad v. Logan*, 4 Ill.App.3d 981, where the court said:

"In the instant case, we agree with defendant that an innocent construction of the words spoken is not only possible, but is in fact the most reasonable meaning to be given. Read in its entirety, the statement concerned itself with what defendant believed was unjustified criticism on the part of plaintiffs. The mention in the statement of their taking cash from the company did not charge plaintiffs with a crime, and indeed could have been an innocent reference to their receipt of salaries or other benefits from the company. The principle of innocent construction, therefore, is applicable to the instant facts. Since the application of that rule, under the *John* case, is a question of law for the court, the trial court properly dismissed the complaint as nonactionable in law." 4 Ill.App.3d 981, 982.

The language quoted above is equally appropriate to the case before us. The words complained of, "In fact, they took the plat showing the lots we are being sued over and I went to BILLY KIRK and, believe it or not, be gave them back," read by themselves, certainly do not impute a burglary or other criminal offense by Billy Kirk. They may be so construed only by referring back to a previous statement by the village president that someone had used a master key and removed papers from his desk. This statement, of course, did not name the plaintiff or refer to him in any way. We may just as logically conclude that Billy Kirk never intended or was completely unaware of, the activities of the person who abstracted the papers from the defendant's desk and that he never intended to keep the papers, as that he committed or abetted the commission of burglary. The words complained of are clearly capable of an innocent construction and fall within the rule of the *John* case enunciated above. Since the words do not of themselves import the commission of a crime they may not be so construed by reference to antecedent circumstances or words not part of the language complained of, therefore they are not slanderous *per se*. This holding under the innocent construction rule is in line with the recent case of *Valentine* where the appellate court (3rd Dist.) in referring to words claimed to be slanderous *per se* in connection with the plaintiff's business or occupation said:

"In context the statement made by Kaufman meant, simply, 'We've had a lousy agency relationship.' Under the innocent construction rule adopted in Illinois, we must find this restricted and circumscribed meaning to be the correct meaning to be ascribed to Kaufman's words, and must declare them to be nonactionable as a matter of law." (16 Ill.App.3d 277, 281.) (This case was affirmed by the supreme court in *Valentine v. North American Co. for Life & Health Insurance*, 60 Ill.2d 168 (1974).)

Also, in the recent case of *Krass v. Froio*, 24 Ill.App.3d 924, this court again confirmed the rule in holding the words complained of to be nonactionable.

■■ We hold, therefore, that the words complained of in this case did not constitute slander *per se* and that the trial court's dismissal of the action was correct.

Judgment affirmed.

T. MORAN and DIXON, JJ., concur.