CHESTNUT CORPORATION, Plaintiff-Appellee, v. PESTINE, BRINATI, GAMER, LTD., *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 1—94—4389, 1—94—4390 cons.

Opinion filed June 6, 1996.—Rehearing denied July 11, 1996.

Thomas F. Falkenberg, Julie L. Trester, Randy Sue Schreiber, and Michael Resis, of Querrey & Harrow, Ltd., of Chicago, for appellant Pestine, Brinati, Gamer, Ltd.

Stephen R. Swofford, Steven M. Puiszis, and John R. Rapasky, of Hinshaw & Culbertson, of Chicago, for appellant Robert Davidson.

Robert R. Coleman and Eugene J. Schiltz, of Robert F. Coleman & Associates, of Chicago, for appellee.

JUSTICE CAHILL delivered the opinion of the court:
We address the liability of an accountant, under the Illinois Public Accounting Act (Act) (225 ILCS 450/30.1 (West 1992)), for negligent misrepresentation to a third party with whom the accountant is not in privity. The trial court denied a motion for summary judgment (735 ILCS 5/2—1005 (West 1994)) by one defendant and a motion to dismiss (735 ILCS 5/2—615 (West 1994)) by the other based upon the court's reading of section 30.1 of the Act. The court framed the issue in the form of a question and certified it under Supreme Court Rule 308 (155 Ill. 2d R. 308). The question reads:
"Whether, under section 30.1 of the Illinois Public Accounting Act, *** an accountant may be liable for allegedly negligent misrepresentations to a third party with whom the accountant is not in privity where the accountant has not stated in writing that the third party was intended to rely on its representations or sent the third party a copy of such a writing."
We granted defendants leave to appeal and now affirm the trial court.

The plaintiff, Chestnut Corporation, invests in other businesses. The defendants are Pestine, Brinati, Gamer, Ltd., an accounting firm, and Robert Davidson, a certified public accountant.

Chestnut expressed an interest in investing in Alphatype Corporation in 1989. Chestnut reviewed Alphatype's financial statements for 1987 and 1988. Pestine prepared both statements, and Davidson reviewed the 1988 statement under an agreement he had with Pestine. Davidson also shared office space with Pestine.

Representatives of Chestnut visited the offices of Pestine and Davidson in 1989 to discuss Alphatype's financial statements. They told the defendants that Chestnut was contemplating an investment in Alphatype and was reviewing its financial condition. Chestnut's representatives asked whether the 1987 and 1988 financial statements were accurate. The defendants stated that the audit was accurately performed according to generally accepted auditing standards. Defendants also gave Chestnut work papers in support of the information in the 1988 statement.

Chestnut invested $1,300,000 in Alphatype, relying on defendants' representations. Alphatype soon lost large amounts of money and filed for bankruptcy.

Chestnut sued defendants for damages when it lost money on the investment in Alphatype. Chestnut alleged in its complaint that defendants made three negligent misrepresentations about Alphatype's financial condition: (1) the value of inventory was less than represented; (2) the value of accounts receivable was overstated; and (3) no accrual was made for vacation pay owed to Alphatype's employees and officers. Chestnut further alleged that defendants knew or should have known the representations were not true. Chestnut alleged that defendants made the representations intending that Chestnut rely on them. Chestnut also alleged that defendants breached a duty to Chestnut by not performing their work according to generally accepted auditing standards.

A thorough review of accountant liability at common law is set out in *Brumley v. Touche Ross & Co.*, 123 Ill. App. 3d 636, 463 N.E.2d 195 (1984), and further explored in a second decision involving the same parties, *Brumley v. Touche, Ross & Co.*, 139 Ill. App. 3d 831, 487 N.E.2d 641 (1985) (*Brumley II*). For many years an accountant was liable in damages for his work only to his client. The often-quoted rationale for this strict limitation on liability was written by Justice Cardozo in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). He reasoned that to allow third parties to recover for an accountant's negligence "may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares*, 255 N.Y. at 179-180, 174 N.E. at 444.

When the court in *Brumley* was presented with the issue of an accountant's liability to a third party, it surveyed the history of the issue since *Ultramares*, then looked to two Illinois Supreme Court cases for guidance: *Rozny v. Marnul*, 43 Ill. 2d 54, 250 N.E.2d 656 (1969), and *Pelham v. Griesheimer*, 92 Ill. 2d 13, 440 N.E.2d 96 (1982). The court in *Rozny* recognized that a nonprivity party could bring an action in Illinois against a surveyor for negligent misrepresentation. The *Pelham* court held that an attorney could owe a duty to a third party who was not his client if the attorney was acting at the direction of or on behalf of his client to benefit or influence the third party. Relying on these opinions, the *Brumley* court held that an accountant owed a duty to third parties who relied on his report or opinion if the accountant "was acting at the direction of or on behalf of his client to benefit or influence [the] third party." *Brumley*, 123 Ill. App. 3d at 642. The court in *Brumley II* then considered an amended complaint and clarified its previous holding by stating: "[T]o be sufficient plaintiff's complaint must allege facts showing that the purpose and intent of the accountant-client relationship was to benefit or influence the third-party plaintiff." *Brumley II*, 139 Ill. App. 3d at 836.

■ Section 30.1 of the Illinois Public Accounting Act was enacted in 1986 and now controls the liability of accountants to third parties not in privity of contract with them. The Act provides:

"No person, partnership or corporation licensed or authorized to practice under this Act or any of its employees, partners, members, officers or shareholders shall be liable to persons not in privity of contract with such person, partnership or corporation, for civil damages resulting from acts, omissions, decisions or other conduct in connection with professional services performed by such person, partnership or corporation, except for:

(1) such acts, omissions, decisions or conduct that constitute fraud or intentional misrepresentations, or

(2) such other acts, omissions, decisions or conduct, if such person, partnership or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action; provided, however, for the purposes of this subparagraph (2), if such person, partnership or corporation (i) identifies in writing to the client those persons who are intending to rely on the services, and (ii) sends a copy of such writing or similar statement to those persons identified in the writing or statement, then such person, partnership or corporation or any of its employees, partners, members, officers or shareholders may be held liable only to such persons intended to so rely, in addition to those persons in privity of

contract with such person, partnership or corporation." 225 ILCS 450/30.1 (West 1992).

Defendants argue on appeal that they owed no duty to Chestnut because Chestnut was not their client and because they never wrote to Chestnut indicating it was entitled to rely on their representations. Defendants read the second clause of section 30.1 as a condition of liability and contend that an accountant can never be liable to a third party for negligent misrepresentation unless the accountant gives written notice to the party. In support defendants rely on the legislative debates and the decision in *Robin v. Falbo*, ___ F. Supp. ___, ___ (N.D. Ill. 1992), which adopts the defendants' interpretation of the statute based upon the legislative debates. To justify delving into the legislative debates, defendants argue that no one could fairly claim the statute is clear on its face.

Plaintiff responds that the written notice referred to in the statute is not a requirement for liability based on an accountant's negligent misrepresentation. Plaintiff contends that if a writing does exist then it would be conclusive evidence that the accountant was aware the client intended the professional services to influence the third parties identified in the writing. Plaintiff alternatively contends that a writing would create a rebuttable presumption that the accountant was unaware of any third party not identified in the writing. We do not reach that level of analysis because the defendants in this case wrote to no one.

■ Construction of a statute is a question of law, and on review, the appellate court will construe the statute independently of the trial court's judgment. *Village of South Elgin v. City of Elgin*, 203 Ill. App. 3d 364, 367, 561 N.E.2d 295 (1990). The rule of statutory construction is to give effect to legislative intent. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81, 630 N.E.2d 820 (1994). The language of the statute is the best indication of legislative intent. *Solich*, 158 Ill. 2d at 81. If the language is clear and unambiguous, we give the terms their ordinary meaning and interpret the language without reference to extrinsic materials. *People ex rel. Baker v. Cowlin*, 154 Ill. 2d 193, 197, 607 N.E.2d 1251 (1992).

When we apply these principles of construction to section 30.1, we need not go beyond the language of the statute to give it meaning. The statute is clear. The first clause of subparagraph (2) states the general rule of accountant liability as set out in the *Brumley* decisions, while the second clause creates a legislative exception to the general rule.

The second clause is introduced by the words "provided, how-

ever"—a phrase that quickens the blood of some lawyers, while the eyes of a layman glaze over. Defendants would have us stop reading there and find that "provided, however," announces a conditional clause which creates a prerequisite that must occur before the first clause takes effect. But to stop there ignores the "if *** then" construction later on, which triggers the operation of the clause—it becomes a condition only if the accountant writes a letter. We need not interpret the effect of the second clause on an accountant's liability when he does write a letter, because that is not the case before us. The "if *** then" propositional construction of the second clause does not apply here. Defendants did not identify any third parties in a writing.

■ Statutes are to be construed to give full effect to each word, clause, and sentence, so that no word, clause, or sentence is surplusage or void. *Kennedy v. Community Unit School District No. 7*, 23 Ill. App. 3d 382, 319 N.E.2d 243 (1974). Courts avoid interpretations which would render part of a statute meaningless or void (*International Bureau of Fraud Control, Ltd. v. Clayton*, 188 Ill. App. 3d 703, 710, 544 N.E.2d 416 (1989)), and the presence of surplusage will not be presumed (*People v. Frieberg*, 147 Ill. 2d 326, 349, 589 N.E.2d 508 (1992)).

■ Defendants' reading of the statute also runs contrary to these principles of statutory construction. If the second clause in subparagraph (2) of section 30.1 meant what defendants claim it means— that there can never be liability unless a letter is written—then the first clause is trumped in all cases and becomes meaningless surplusage. Under the Illinois law cited, we decline to adopt the defendants' reading. A third party may state a cause of action under the statute even though there is no writing. When the accountant writes to no one, the plaintiff must show the intent of the client and knowledge of the accountant of that intent.

Plaintiff has shown that an issue of fact exists regarding whether defendants knew Alphatype intended plaintiff to rely on the reports and financial statements prepared by defendants. The trial court correctly denied defendant Pestine's motion for summary judgment and defendant Davidson's motion to dismiss.

We note in passing the trial court's observation that to adopt the defendants' interpretation of the statute would require us to hold, as a matter of law, that accountants are never liable to third parties, absent fraud or intentional misrepresentation, unless they agree in writing to expose themselves to liability. The law in Illinois would have come full circle then and returned to the rationale of *Ultramares* in 1931. Absent a clear signal from the legislature or the

supreme court that such a return is intended, we believe the observation of the trial court and the evolution of the law since *Ultramares* provide a useful background as one measures the statute's meaning.

We also note that defendant Davidson argues the trial court erred in denying his motion to dismiss count III of plaintiff's complaint for various other reasons. We limit our review to the question certified by the trial court. *McMichael v. Michael Reese Health Plan Foundation*, 259 Ill. App. 3d 113, 116, 631 N.E.2d 317 (1994).

Affirmed.

THEIS and O'BRIEN, JJ., concur.